ANNIE BROWN, Plaintiff v. BURLINGTON INDUSTRIES, INC., Defendant

No. 8817SC526

(Filed 18 April 1989)

**1. Master and Servant § 87.1— sexual harassment at work— action for intentional infliction of mental distress—not barred by Workers' Compensation Act**

Plaintiff's claim for intentional infliction of mental distress arising from sexual harassment in the workplace alleged a common law action against plaintiff's employer for its intentional conduct and is not barred by the provisions of the Workers' Compensation Act. N.C.G.S. § 97-10.1.

**2. Trespass § 2— intentional infliction of emotional distress —sexual harassment—directed verdict and judgment notwithstanding verdict properly denied**

The trial court did not err by denying defendant's motions for a directed verdict and judgment n.o.v. in an action arising from the sexual harassment of plaintiff in her workplace where there was sufficient evidence to allow plaintiff's case to be submitted to the jury in that the manager of the plant where plaintiff worked made remarks and gestures toward plaintiff which constituted conduct which could reasonably be found to be sufficiently outrageous to permit plaintiff to recover; the conduct was unquestionably directed toward plaintiff; and evidence presented at trial tended to show that plaintiff became nervous, lost weight, had ulcers, nightmares, diarrhea, and crying spells as a result of the manager's conduct.

**3. Trespass § 2— sexual harassment in the workplace—ratification of plant manager's acts by corporation—directed verdict and judgment n.o.v. properly denied**

The trial court properly denied defendant's motion to dismiss and for judgment n.o.v. on plaintiff's claim for intentional infliction of mental and emotional distress arising from sexual harassment at work where, although the plant manager who was harassing plaintiff was promptly dismissed when the matter was reported to defendant's division manager, defendant's department manager had an explicit duty to rectify the problem and his omission of action was a course of conduct which a jury could conclude reasonably tended to show ratification of the plant manager's acts by defendant.

BROWN v. BURLINGTON INDUSTRIES, INC.

[93 N.C. App. 431 (1989)]

**4. Trespass § 2— intentional infliction of emotional distress — sexual harassment— evidence sufficient for punitive damages**

The trial court did not err in an action for intentional infliction of emotional distress arising from sexual harassment in the workplace by denying defendant's motions for a directed verdict and judgment n.o.v. on the claim for punitive damages where plaintiff presented sufficient evidence of an outrageous act to support submission of punitive damages to the jury.

APPEAL by defendant from *Morgan, Melzer A., Jr., Judge.* Judgment entered 18 December 1987 in ROCKINGHAM County Superior Court. Heard in the Court of Appeals 11 January 1989.

Plaintiff is a resident of Rockingham County, North Carolina. Defendant is a corporation which maintains a place of business and its corporate headquarters in Guilford County, North Carolina. Plaintiff was employed by defendant from May 1970 to June 1985 at defendant's Madison, North Carolina plant. Plaintiff was initially employed as a texturing operator. In 1975, plaintiff was promoted to supervisor in texturing, a position she retained until May 1985. In early 1985, the Madison plant underwent a reduction in work force. Plaintiff was given an option of returning to wage status or retiring with severance pay and benefits. Plaintiff chose retirement and after a period of working at wages status, left the employ of defendant in June 1985.

Ernest Whitmore was manager of the Twintex plant in Madison, North Carolina in 1976-1977. From 1977 to March 1985, Whitmore was manager of the other Burlington plant in Madison. From early 1983 until 1985, Ernest Whitmore made sexually suggestive remarks and gestures toward plaintiff. This sexual harassment continued on an ongoing basis two or three times a week for two years. During this period of time, plaintiff complained on numerous occasions to Lewis Bottoms, plaintiff's immediate supervisor and department head, about the sexual harassment. Defendant's open-door policy, as contained in its employee handbook, instructed employees to bring any complaints initially to their supervisor, or if they felt more comfortable in doing so, to their department head or personnel manager. Whitmore's sexual harassment of plaintiff continued despite her complaints to Lewis Bottoms.

In March 1985, defendant's plant personnel manager was informed about Whitmore's actions. After further investigation the

decision was made by defendant on 28 March 1985 to terminate Ernest Whitmore. Whitmore was involuntarily terminated on 1 April 1985.

Plaintiff commenced the present action against defendant and Ernest Whitmore in July 1986, seeking damages for intentional infliction of mental and emotional distress, negligence, and invasion of privacy. Prior to trial, defendant filed motions to dismiss and motions for summary judgment. These motions were denied.

The case came on for trial at the 7 December 1987 civil session of Rockingham County Superior Court. On 8 December 1987, plaintiff voluntarily dismissed the action as to Whitmore. At the end of the trial, the jury answered the following issues against defendant: whether Whitmore's actions were within the scope of his employment and in furtherance of defendant's business; whether defendant ratified the conduct of Whitmore; and whether defendant had negligently retained Whitmore in its employ. The jury answered the issue of contributory negligence against plaintiff. Judgment was entered on 18 December 1987 on a jury verdict awarding plaintiff $10,000 compensatory damages and $50,000 punitive damages. Defendant appealed.

*Kennedy, Kennedy, Kennedy and Kennedy, by Harold L. Kennedy, III, Harvey L. Kennedy, and Annie Brown Kennedy, for plaintiff-appellee.*

*Smith Helms Mulliss & Moore, by McNeill Smith, Michael A. Gilles, and Julie C. Theall, for defendant-appellant.*

WELLS, Judge.

Defendant assigns error to the trial court's denial of its motions for directed verdict and judgment notwithstanding the verdict. "The purpose of a motion for a directed verdict is to test the legal sufficiency of the evidence." *Hitchcock v. Cullerton,* 82 N.C. App. 296, 346 S.E. 2d 215 (1986). "In passing on a motion for directed verdict, the trial court must consider the evidence in the light most favorable to the nonmovant, and conflicts in the evidence together with inferences which may be drawn therefrom must be resolved in favor of the nonmovant." *DeHart v. R/S Financial Corp.,* 78 N.C. App. 93, 337 S.E. 2d 94 (1985), *disc. rev. denied,* 316 N.C. 376, 342 S.E. 2d 893 (1986). "The motion should be denied if there is 'any evidence more than a scintilla' sufficient to support plaintiffs'

*prima facie* case." *Rice v. Wood,* 82 N.C. App. 318, 346 S.E. 2d 205, *disc. rev. denied,* 318 N.C. 417, 349 S.E. 2d 599 (1986) (*quoting Cunningham v. Brown,* 62 N.C. App. 239, 302 S.E. 2d 822, *disc. rev. denied,* 308 N.C. 675, 304 S.E. 2d 754 (1983)). "[A motion for judgment notwithstanding the verdict (JNOV)] . . . is a motion for the trial court to enter judgment in accordance with the movant's earlier motion for directed verdict, notwithstanding the contrary verdict actually returned by the jury." *DeHart, supra,* at 98, 337 S.E. 2d at 98. "The same standard is to be applied by the courts in ruling on a motion for JNOV as is applied in ruling on a motion for a directed verdict." *Smith v. Price,* 315 N.C. 523, 340 S.E. 2d 408 (1986).

Plaintiff alleged intentional infliction of mental and emotional distress as her first cause of action. The constituent elements of this tort which must be established by the evidence are "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress." *Hogan v. Forsyth Country Club Co.,* 79 N.C. App. 483, 340 S.E. 2d 116, *disc. rev. denied,* 317 N.C. 334, 346 S.E. 2d 140 (1986).

[1]   Defendant first argues that the trial court erred in denying its motions because the trial court did not have jurisdiction over plaintiff's claim. Defendant contends that plaintiff's claim is covered by the North Carolina Workers' Compensation Act (the Act) and therefore her "exclusive remedy lies with the Industrial Commission." We explicitly rejected this position in *Hogan,* wherein defendant claimed that N.C. Gen. Stat. § 97-10.1, the exclusivity of remedies provision of the Act, barred plaintiffs' claims for intentional infliction of emotional distress. In determining whether the provisions of the Act barred plaintiff's claims, this Court examined the types of claims and injuries covered by the Act. We noted in *Hogan* that "the Act does not bar a common law action by an employee against his employer for the intentional conduct of the employer." *Id.* at 488, 340 S.E. 2d at 120. We further noted that the plaintiffs in *Hogan* "suffered damages which would be recoverable in a civil action but which are not compensable under the Act." The claims "do not involve an isolated physical injury not compensable under the Act, rather they allege an entire class of civil wrongs which are outside the scope of the Act." *Hogan* at 489, 340 S.E. 2d at 120. In holding that plaintiffs' claims were not barred by the Act, we stated: "The essence of the tort of intentional infliction of emotional distress is non-physical; the injuries alleged by plaintiffs

do not involve physical injuries resulting in disability. Therefore, we conclude that plaintiffs' actions for intentional infliction of mental and emotional distress are not barred by G.S. 97-10.1." *Id.* at 490, 340 S.E. 2d at 121.

The present case presents the same issue concerning the Act as that encountered in *Hogan*. Plaintiff alleges that she suffered "mental and emotional distress" as a result of intentional tortious acts by defendant. Plaintiff's complaint alleges a common law action against defendant's employer for its intentional conduct. Plaintiff seeks recovery for damages which are not compensable under the Act; therefore, plaintiff's claim is not barred by the provisions of the Act. Defendant's assignment of error is overruled.

[2]  Defendant next contends the trial court erred in denying its motions because there was no evidence that Ernest Whitmore's remarks and gestures toward plaintiff were extreme and outrageous and intended by Whitmore to cause severe emotional distress which did cause such distress. Examining the evidence in a light most favorable to plaintiff as nonmovant and resolving all inferences in her favor, it is clear that plaintiff established a *prima facie* case of intentional infliction of emotional distress. Plaintiff's evidence at trial tended to show that Ernest Whitmore made sexually suggestive remarks and gestures toward plaintiff. Whitmore asked plaintiff "how tight [she] was," referring to her vagina; indicated that he would like to have plaintiff's "long legs wrapped around his body"; grabbed his penis and said to plaintiff "you just tear me up"; and held plaintiff's paycheck while puckering his lips inferring plaintiff would have to kiss Whitmore to receive her check. Whitmore also implied that if plaintiff would have sex with him, Whitmore would place plaintiff in another position in the plant so as to allow plaintiff to have a job despite a pending layoff and despite a problem with plaintiff's hand. On several occasions, Whitmore asked plaintiff to wait for him so they could go off together. Whitmore's actions were substantially similar to those of Hans Pfeiffer in *Hogan*, wherein the evidence tended to show that Pfeiffer made sexually suggestive remarks to plaintiff Cornatzer, "coaxing her to have sex with him and telling her that he wanted to 'take' her." Pfeiffer also "[brushed] up against [plaintiff], [rubbed] his penis against her buttocks and [touched] her buttocks with his hands." *Id.* In response to defendant's contentions in *Hogan* that Pfeiffer's conduct was not sufficiently outrageous to establish a *prima facie* case, we stated:

BROWN v. BURLINGTON INDUSTRIES, INC.

[93 N.C. App. 431 (1989)]

It is a question of law for the court to determine, from the materials before it, whether the conduct complained of may reasonably be found to be sufficiently outrageous as to permit recovery . . . . However, once conduct is shown which may be reasonably regarded as extreme and outrageous, it is for the jury to determine, upon proper instructions, whether the conduct complained of is, in fact, sufficiently extreme and outrageous to result in liability.

*Id.* at 491, 340 S.E. 2d at 121. (Citations omitted.) Ernest Whitmore's remarks and gestures toward plaintiff in the present case constituted conduct which could reasonably be found to be sufficiently outrageous to permit plaintiff to recover. The conduct was unquestionably directed toward plaintiff. Evidence presented at trial tended to show, as a result of Whitmore's conduct, that plaintiff became nervous, lost weight, had ulcers, nightmares, diarrhea, and crying spells. There was sufficient evidence to allow plaintiff's case to be submitted to the jury. Defendant's assignment of error is overruled.

[3] Defendant also argues that the trial court erred in denying its motions because there was no evidence Whitmore was acting within the scope of his employment in sexually harassing plaintiff and no evidence defendant ratified Whitmore's conduct toward plaintiff. These contentions concern the issue of whether the defendant, as principal, may be liable for the intentional tortious acts of its agent, Whitmore. We stated in *Hogan*:

As a general rule, liability of a principal for the torts of his agent may arise in three situations: (1) when the agent's act is expressly authorized by the principal; (2) when the agent's act is committed within the scope of his employment and in furtherance of the principal's business; or (3) when the agent's act is ratified by the principal.

*Id.* For plaintiff to recover in the present case, she must establish that Whitmore's acts and the conduct of defendant fall into one of the aforementioned categories. There is no indication that Whitmore's conduct was expressly authorized by defendant. "To be within the scope of employment, an employee, at the time of the incident, must be acting in furtherance of the principal's business and for the purpose of accomplishing the duties of his employment." *Troxler v. Charter Mandala Center*, 89 N.C. App. 268, 365 S.E. 2d 665, *disc. rev. denied*, 322 N.C. 838, 371 S.E. 2d 284 (1988).

"If an employee departs from that purpose to accomplish a purpose of his own, the principal is not liable." *Id.* at 271, 365 S.E. 2d at 668. Defendant contends there was no evidence Whitmore was acting within the scope of his employment and in furtherance of defendant's business in sexually harassing plaintiff. We agree. Intentional tortious acts are rarely considered to be within the scope of an employee's employment. We do not perceive Whitmore's acts in the present case to be within the scope of his employment and in furtherance of defendant's business.

Plaintiff's recovery from defendant must therefore rest upon a showing that defendant ratified the conduct of Whitmore. Defendant argues that there was no evidence it ratified Whitmore's conduct in light of Whitmore's prompt dismissal when the matter was reported to defendant's division manager. "In order to show that the wrongful act of an employee has been ratified by his employer, it must be shown that the employer had knowledge of all material facts and circumstances relative to the wrongful act, and that the employer, by words or conduct, shows an intention to ratify the act." *Hogan, supra,* at 492, 340 S.E. 2d at 122. "The jury may find ratification from any course of conduct on the part of the principal which reasonably tends to show an intention on his part to ratify the agent's unauthorized acts." *Equipment Co. v. Anders,* 265 N.C. 393, 144 S.E. 2d 252 (1965). Such course of conduct may involve an omission to act. In the present case the evidence at trial tended to show that defendant's company policy advises employees to speak to their supervisor first whenever they had a problem. The company policy further encourages employees to talk to either their personnel manager or department head if they felt more comfortable talking to them rather than to their supervisor. Plaintiff discussed her problem concerning Whitmore with Lewis Bottoms, who was plaintiff's immediate supervisor and department manager. "The designation 'manager' implies general power and permits a reasonable inference that he was vested with the general conduct and control of defendant's business . . ., and his acts are, when committed in the line of his duty and in the scope of his employment, those of the company." *Hogan, supra* (*quoting Gillis v. Tea Co.,* 223 N.C. 470, 27 S.E. 2d 283 (1943)). Defendant's division manager testified that the department manager had the obligation to report sexual misconduct to higher authorities within the company when such misconduct is reported by an employee to the manager. Therefore, it was the duty of Lewis

Bottoms to report instances of sexual misconduct to higher authorities. This duty was within the scope of Bottoms' employment as a department manager, a position which gave Bottoms general power over the conduct and control of defendant's business in the department. Where defendant, through Bottoms, had an explicit duty to rectify the problem posed by Whitmore's sexual harassment of plaintiff, Bottoms' omission of action was a course of conduct which a jury could conclude reasonably tends to show ratification of Whitmore's acts by defendant. Defendant's assignment of error is overruled.

[4] Defendant also contends that the trial court erred in denying its motions because the jury's award of punitive damages was improper. "Punitive damages are awarded in addition to compensatory damages for the purpose of punishing the wrongdoer and deferring others from committing similar acts." *Hornby v. Penn. Nat'l Mut. Casualty Ins. Co.*, 77 N.C. App. 475, 335 S.E. 2d 335, *disc. rev. denied*, 316 N.C. 193, 341 S.E. 2d 570 (1986). "Punitive damages are recoverable in tort actions only where there are aggravating factors surrounding the commission of the tort such as actual malice, oppression, gross and wilful wrong, insult, indignity, or a reckless or wanton disregard of plaintiff's rights." *Burns v. Forsyth Co. Hospital Authority*, 81 N.C. App. 556, 344 S.E. 2d 839 (1986). Such damages "are not recoverable as a matter of right in any case, but only in the discretion of the jury when the evidence warrants." *Hunt v. Hunt*, 86 N.C. App. 323, 357 S.E. 2d 444, *affirmed*, 321 N.C. 294, 362 S.E. 2d 161 (1987). Plaintiff has offered sufficient evidence to establish a *prima facie* case of intentional infliction of emotional distress. One of the constituent elements of that case is an "extreme and outrageous" act by defendant or a third party which is then imputed to defendant as in the present case. As we stated in *Cavin's, Inc. v. Insurance Co.*, 27 N.C. App. 698, 220 S.E. 2d 403 (1975), "Punitive damages are never awarded merely because of a personal injury inflicted nor are they measured by the extent of the injury; they are awarded because of the outrageous nature of the wrongdoer's conduct." Plaintiff has presented sufficient evidence of an outrageous act. The existence of an outrageous act supports submission of an issue pertaining to punitive damages to the jury. The decision to award punitive damages is the discretionary province of the jury. This argument is rejected.

We have examined defendant's other assignments of error and found them to be without merit.

No error.

Judges BECTON and JOHNSON concur.