AHMED TAHA D/B/A GRILLMEISTER v. JOSEPH M. THOMPSON, RALPH F. GORDON, JR. AND GARY T. SHOOK, D/B/A MIMOSA PROPERTIES

No. 94-1344

(Filed 7 November 1995)

## 1. Landlord and Tenant § 18 (NCI4th)— breach of lease— ambiguous language—finding as matter of law error

The trial court erred in finding a breach of the parties' lease as a matter of law where the language in the lease "provided ten-

ant operates a full service sandwich and grill landlord will not lease shop space to another grill or sandwich shop," was susceptible to two interpretations, that the lease precluded defendants' renting space to another actual grill or sandwich shop, as contended by defendants, or that the lease prevented defendants from leasing to any other restaurant which served grilled items or sandwiches, as contended by plaintiff.

**Am Jur 2d, Alteration of Instruments §§ 7, 24, 42 et seq.; Landlord and Tenant §§ 158 et seq., 176, 180, 181.**

**Validity, construction, and effect of statute or lease provision expressly governing rights and compensation of lessee upon condemnation of leased property. 22 ALR5th 327.**

**2. Waiver § 3 (NCI4th)— breach of lease—failure to submit waiver to jury—no error**

The trial court in an action for breach of a lease did not err in failing to submit the issue of waiver to the jury where defendants did not plead waiver in their original answer or in their answer to plaintiff's first amended complaint, nor was there express or implied consent at trial.

**Am Jur 2d, Estoppel and Waiver § 150.**

**3. Judgments § 650 (NCI4th)— pre-judgment interest—award by trial court proper**

The trial court did not err in awarding pre-judgment interest from a specified date when the jury did not distinguish between principal and interest, since the court and attorneys said nothing about interest; it was therefore presumed that the jury did not include it in their award; computing the interest was a mere clerical matter; and it would have been a pointless waste of time to ask the jury to distinguish between principal and interest.

**Am Jur 2d, Judgments §§ 477-493.**

**4. Conversion § 10 (NCI4th); Trespass § 45 (NCI4th); Unfair Competition or Trade Practices § 38 (NCI4th)— conversion of restaurant equipment—trespass by landlord— unfair and deceptive trade practices—failure to submit to jury—error**

The trial court erred in failing to submit to the jury plaintiff tenant's claims against defendant landlords for (1) conversion,

TAHA v. THOMPSON

[120 N.C. App. 697 (1995)]

where plaintiff offered evidence that defendants converted his property by refusing to allow him to remove his walk-in cooler and freezer from the premises, since those items were trade fixtures and remained the personal property of plaintiff; (2) trespass, where plaintiff's evidence showed that a locksmith under defendants' instruction entered onto the leased premises without plaintiff's authorization and attempted to change the locks; and (3) unfair and deceptive trade practices, since trespass and conversion by a landlord constitute an unfair and deceptive trade practice.

**Am Jur 2d, Consumer and Borrower Protection §§ 302 et seq.; Monopolies, Restraints of Trade, and Unfair Trade Practices § 735; Trespass § 215.**

5. **Contracts § 143 (NCI4th); Damages § 129 (NCI4th)— tortious breach of contract—insufficiency of evidence— wrongful eviction—punitive damages—directed verdict proper**

The trial court did not err in refusing to submit to the jury plaintiff's claim for tortious breach of contract, in directing verdict for defendants on plaintiff's claim for constructive eviction, or in directing verdict for defendants on plaintiff's claim for punitive damages.

**Am Jur 2d, Contracts §§ 716-745.**

**Measure of damages for conversion or loss of commercial paper. 85 ALR2d 1349.**

Appeal by plaintiff and defendants from judgment entered 2 August 1994 by Judge F. Gordon Battle in Wake County Superior Court. Heard in the Court of Appeals 11 September 1995.

*Law Offices of Charles H. Montgomery, by Charles H. Montgomery and Kenneth M. Craig, for plaintiff.*

*Hunter, Wharton & Stroupe, L.L.P., by John V. Hunter, for defendants.*

LEWIS, Judge.

Plaintiff commenced this action alleging breach of lease, loss of business income, conversion, unfair and deceptive trade practices, tortious breach of contract, trespass and wrongful eviction. He

sought compensatory and punitive damages. Defendants counterclaimed for unpaid rents and damages to the leased premises. Prior to closing arguments, Judge Battle ruled as a matter of law that defendants had breached their contract with plaintiff. The only issue submitted to the jury was that of damages. Plaintiff was awarded $40,000. Following the jury verdict, Judge Battle denied plaintiff's unfair and deceptive trade practices claim and his motion for a new trial. Plaintiff then moved to amend the judgment to have interest run from the date of the breach rather than from the date of the filing of the complaint. This motion was allowed and an order was entered. Plaintiff and defendants appeal.

On February 27, 1991, Ahmed Taha, an Egyptian citizen, entered into a lease with Joseph M. Thompson, Ralph F. Gordon, Jr. and Gary T. Shook, d/b/a Mimosa Properties for restaurant space in Swift Creek Shopping Center. At plaintiff's request, a clause was inserted into the lease which provided that if "tenant operates a full service sandwich and grill landlord will not lease shop space to another grill or sandwich shop."

The parties agreed that plaintiff would prepare the interior of the restaurant with an allowance provided by defendants. In addition to the allowance, plaintiff spent a large sum of his own money fixing up the space and purchasing equipment for the restaurant. Plaintiff's restaurant, "Grillmeister", opened on May 24, 1991.

Prior to the opening of the restaurant, plaintiff and defendants had a disagreement over who was to pay for the screening around the air conditioning unit on the roof. The screening was required by the Town of Cary. Defendants eventually paid for the screening, but charged the cost against plaintiff as additional rent, even though they had provided the screening for another restaurant without charge. Plaintiff alleges that defendants lied to him by denying that they had paid for the neighboring restaurant's screening. As a result of the screen dispute, Defendant Thompson (1) asked the Town of Cary to revoke Taha's certificate of occupancy, which would have put Grillmeister out of business, and (2) sent plaintiff notice that he was in violation of his lease.

Defendants also notified Mr. Taha that he was in violation of his lease after he began selling yogurt, an activity not allowed by his contract. Mr. Taha stopped selling yogurt.

**TAHA v. THOMPSON**

[120 N.C. App. 697 (1995)]

In the spring of 1991, defendants first mentioned to plaintiff that a barbecue restaurant might be coming to the shopping center. Plaintiff asserted that the lease to such a restaurant would be in violation of the clause in his lease prohibiting defendants from leasing to another grill or sandwich shop. Despite Mr. Taha's objections, B.J.'s Bar-B-Q and Home Cook'n restaurant ("B.J.'s") opened in Swift Creek Shopping Center on September 24, 1991. In addition to barbecue, B.J.'s served hamburgers, grilled chicken sandwiches, chicken salad sandwiches, BLT's, and several grilled items.

Plaintiff testified that after he objected to the barbecue restaurant coming to the shopping center, Defendant Thompson approached him with a raised fist and said, "I am going to get you." Mr. Taha also testified that Mr. Thompson told him people said his restaurant was dirty and expensive and his buns were cold, to which Mr. Taha responded that people thought Thompson was greedy and two-faced. Thompson admitted telling others that the food was bland and buns were cold. A witness for plaintiff also testified that Mr. Thompson told him he did not want to rent to Arabs anymore.

In November, 1991, plaintiff closed the restaurant for the Thanksgiving holiday. He testified that he left a sign in the window displaying the date when he would reopen, December 2, 1991. On that date, Mr. Taha was called to the restaurant and found someone changing the locks on his restaurant, at defendants' request. Defendants believed Mr. Taha had abandoned the premises.

The next day, Mr. Taha decided to remove his property from the restaurant. However, he was unable to remove his walk-in cooler and freezer because Defendant Thompson refused to disconnect the water supply, which was necessary before he could remove the machinery. Thompson testified he believed these items were fixtures, not the personal property of plaintiff.

[1] Defendants first contend that the trial court erred in finding a breach of the lease as a matter of law. We agree. Contract language which is "plain and unambiguous on its face" can be interpreted as a matter of law; however, if it is ambiguous, it is a question for the jury. *Cleland v. Children's Home*, 64 N.C. App. 153, 156, 306 S.E.2d 587, 589 (1983). Ambiguity exists where the "language of the [contract] is fairly and reasonably susceptible to either of the constructions asserted by the parties." *Maddox v. Insurance Co.*, 303 N.C. 648, 650, 280 S.E.2d 907, 908 (1981). In the present case, defendants claim the lease only precluded their renting space to another actual grill or

sandwich shop. However, plaintiff contends the provision prevented them from leasing to any other restaurant which served grilled items or sandwiches. We believe the language ("provided tenant operates a full service sandwich and grill landlord will not lease shop space to another grill or sandwich shop.") to be "fairly and reasonably susceptible" to either construction. As such, we find the provision ambiguous and thus a jury issue. We reverse on this issue and remand this matter for a jury trial.

[2] Defendants also argue that the trial court erred in failing to submit the issue of waiver to the jury. We disagree. Waiver is an affirmative defense which "must be pled with certainty and particularity." *Duke University v. St. Paul Mercury Ins. Co.*, 95 N.C. App. 663, 673, 384 S.E.2d 36, 42 (1989). Failure to plead an affirmative defense results in a surrender of that defense unless it is tried by express or implied consent. *Nationwide Mut. Insur. Co. v. Edwards*, 67 N.C. App. 1, 6, 312 S.E.2d 656, 660 (1984). Defendants in this case did not plead waiver in their original answer or in their answer to plaintiff's first amended complaint. Additionally, our review of the record discloses no express or implied consent at trial. As a result, we find no error in the failure to submit the waiver issue to the jury.

[3] Defendants also claim that the trial court erred in awarding prejudgment interest from December 3, 1991 when the jury did not distinguish between principal and interest as directed by N.C. Gen Stat. § 24-5 (1991). We find no error. G.S. § 24-5 authorizes interest on damages from the date of breach. *Craftique, Inc. v. Stevens and Co., Inc.*, 321 N.C. 564, 568, 364 S.E.2d 129, 132 (1988). The requirement that the jury distinguish between principal and interest "obviously pertains only to those rare situations where *evidence as to both principal and interest* is submitted to the jury for their consideration." *Dailey v. Integon Ins. Corp.*, 75 N.C. App. 387, 403, 331 S.E.2d 148, 159, *disc. review denied*, 314 N.C. 664, 336 S.E 2d 399 (1985). In this case, the court instructed the jury only to find the amount of damages plaintiff suffered as a result of the breach. There was no mention of interest. Since the court and attorneys said nothing about interest, it is presumed that the jury did not include it in their award. *Perry v. Norton*, 182 N.C. 585, 589, 109 S.E. 641, 644 (1921). Therefore, as this Court previously found in *Dailey*, "[i]n this case, computing the interest due was a mere clerical matter, and it would have been an absurd, pointless waste of time to ask the jury to 'distinguish' between principal and interest." *Dailey*, 75 N.C. App. at 403-04, 331 S.E.2d at 159. Furthermore, we find no prejudice to defendants from the trial court's

choice of December 3, 1991 as the date of breach, for this date was the latest one on which breach could have been found.

We see no need to address the remaining assignments of error proposed by defendants, as they may or may not arise for determination when this case is tried again. If so, we have confidence that the trial judge will decide them correctly.

Plaintiff sets forth several assignments of error as well. He finds error in the trial court's failure to submit his conversion, trespass, unfair and deceptive trade practices and tortious breach of contract claims to the jury. Both parties and this Court recognize this failure in essence to be a directed verdict on these issues.

"To survive a motion for a directed verdict, the nonmoving party . . . must present 'sufficient evidence to sustain a jury verdict in [his] favor, . . . or to present a question for the jury.'" *Best v. Duke University,* 337 N.C. 742, 749, 448 S.E.2d 506, 510 (1994) (quoting *Davis v. Dennis Lilly Co.,* 330 N.C. 314, 323, 411 S.E.2d 133, 138 (1991)). All conflicts in the evidence must be resolved in plaintiff's favor and he is entitled to the benefit of every inference that could reasonably be drawn in his favor. *West v. Slick,* 313 N.C. 33, 40, 326 S.E.2d 601, 605 (1985).

[4] Plaintiff first contends that defendants converted his property by refusing to allow him to remove the walk-in cooler and freezer from the premises. Conversion is the "unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Peed v. Burleson's, Inc.,* 244 N.C. 437, 439, 94 S.E.2d 351, 353 (1956). Plaintiff asserts that the walk-in cooler and freezer at issue were trade fixtures and therefore his personal property. Items of personal property which are attached to the leasehold for business purposes are trade fixtures, *Lewis v. Lewis Nursery, Inc.,* 80 N.C. App. 246, 253, 342 S.E.2d 45, 49, *disc. review denied,* 317 N.C. 704, 347 S.E.2d 43 (1986), and they remain the personal property of the tenant. *Stephens v. Carter,* 246 N.C. 318, 321, 98 S.E.2d 311, 313 (1957). Viewing the facts of this case in a light most favorable to the plaintiff, we hold that he has presented sufficient evidence to warrant submission of the conversion claim to the jury.

Plaintiff also asserts that defendants trespassed on his property. To establish a trespass claim, plaintiff must prove that (1) plaintiff was in possession of the land at the time of the alleged trespass; (2)

defendant made an unauthorized entry on the land; and (3) plaintiff was damaged by the alleged invasion of his possessory rights. *Matthews v. Forrest*, 235 N.C. 281, 283, 69 S.E.2d 553, 555 (1952). Actual damages do not have to be proven, since any unauthorized entry at least entitles plaintiff to nominal damages. *Keziah v. R. R.*, 272 N.C. 299, 311, 158 S.E.2d 539, 548 (1968). In the present case, plaintiff's evidence shows that a locksmith under defendants' instruction entered onto the leased premises without plaintiff's authorization and attempted to change the locks. Viewed in a light most favorable to plaintiff, this evidence is sufficient to support each element of a trespass claim. We find this issue should have been submitted to the jury as well.

Plaintiff also assigns error to the failure of the trial court to instruct the jury and submit evidence to them of defendants' unfair and deceptive trade practices. We agree. In *Love v. Pressley*, 34 N.C. App. 503, 239 S.E.2d 574 (1977), *disc. review denied*, 294 N.C. 441, 241 S.E.2d 843 (1978), interpreting an earlier version of N.C. Gen. Stat. § 75-1.1 which was more narrow in scope, this Court held that trespass and conversion by the landlord constituted an unfair and deceptive trade practice. *Love*, 34 N.C. App. at 515-17, 239 S.E.2d at 582-83. Because we find sufficient evidence to submit the trespass and conversion claims to the jury, we conclude it would be error not to submit the factual issues underlying plaintiff's unfair and deceptive trade practices claim as well. Furthermore, since plaintiff cannot recover treble damages or attorney's fees unless this claim is resolved in his favor, we need not address his assignment of error regarding these issues.

[5] Plaintiff also argues that his tortious breach of contract claim was erroneously withheld from the jury. We disagree. Reading *Olive v. Great American Ins. Co.*, 76 N.C. App. 180, 333 S.E.2d 41, *disc. review denied*, 314 N.C. 668, 336 S.E.2d 400 (1985) and *Dailey*, 75 N.C. App 387, 331 S.E.2d 148 together, it is clear that in analyzing the substance of tortious breach of contract claims, this Court uses the same standard as in determining whether punitives are available for breach of contract. In *Stanback v. Stanback*, 297 N.C. 181, 254 S.E.2d 611 (1979), our Supreme Court expressed the law in North Carolina regarding a claim for punitive damages in a contract action:

> The general rule as it has often been stated in the opinions of this Court is that punitive damages are not recoverable for breach of contract with the exception of breach of contract to marry. But

when the breach of contract also constitutes or is accompanied by an identifiable tortious act, the tort committed may be grounds for recovery of punitive damages. Our recent holdings in this area of the law clearly reveal, moreover, that allegations of an identifiable tort accompanying the breach are insufficient alone to support a claim for punitive damages. In *Newton* the further qualification was stated thusly: "Even where sufficient facts are alleged to make out an identifiable tort, however, the tortious conduct must be accompanied by or partake of some element of aggravation before punitive damages will be allowed."

*Id.* at 196, 254 S.E.2d at 621 (citations omitted).

Aggravation includes "fraud, malice, such a degree of negligence as indicates a reckless indifference to consequences, oppression, insult, rudeness, caprice, [and] willfulness." *Newton v. Insurance Co.*, 291 N.C. 105, 112, 229 S.E.2d 297, 301 (1976). Because we find that the evidence of defendants' behavior does not rise to the level of aggravation required to submit this claim to the jury, we affirm the trial court's directed verdict.

Plaintiff also assigns error to the trial court's directed verdict for defendants on his claim for wrongful eviction, specifically, constructive eviction. Constructive eviction is an act by a landlord "which deprives his tenant of that beneficial enjoyment of the premises to which he is entitled under his lease, causing the tenant to abandon them." *Marina Food Assoc., Inc. v. Marina Restaurant, Inc.*, 100 N.C. App. 82, 92, 394 S.E.2d 824, 830, *disc. review denied*, 327 N.C. 636, 399 S.E.2d 328 (1990). Constructive eviction is a breach of the lease by the landlord which makes the property "untenable." *Id.* Even taking the facts alleged by plaintiff as true, we find no act committed by defendants sufficient to cause plaintiff to abandon his restaurant because it was untenable. We affirm the trial court's directed verdict as to the constructive eviction claim.

Plaintiff also contends that the trial court's directed verdict as to punitive damages was error. We disagree. In *Brown v. Burlington Industries, Inc.*, 93 N.C. App. 431, 378 S.E.2d 232 (1989), *disc. review improv. allowed*, 326 N.C. 356, 388 S.E.2d 769 (1990), this Court stated the law on punitive damages:

"Punitive damages are awarded in addition to compensatory damages for the purpose of punishing the wrongdoer and deferring others from committing similar acts." . . . "Punitive damages are

recoverable in tort actions only where there are aggravating factors surrounding the commission of the tort such as actual malice, oppression, gross and wilful wrong, insult, indignity, or a reckless or wanton disregard of plaintiff's rights." . . . [Punitive] damages "are not recoverable as a matter of right in any case, but only in the discretion of the jury when the evidence warrants."

*Id.* at 438, 378 S.E.2d at 236 (citations omitted).

"Whether the evidence of outrageous conduct is sufficient to carry the issue of punitive damages to the jury is a question for the court." *Rogers v. T.J.X. Companies*, 329 N.C. 226, 231, 404 S.E.2d 664, 667 (1991).

Plaintiff argues that punitive damages should be awarded for defendants' trespass, conversion, wrongful eviction and tortious breach of contract. However, we have affirmed the trial court's directed verdict as to wrongful eviction and tortious breach, leaving trespass and conversion as the only possible torts for which punitives may be available. In considering the plaintiff's evidence in a light most favorable to him, we do not find a sufficient basis to warrant a punitive damages award. Defendant's conduct surrounding these alleged torts, while not commendable, simply does not rise to the level of outrageous conduct necessary for punitive damages.

Finally, plaintiff argues that the trial court erred in refusing to admit a letter from his attorney to defendants. The court sustained defendants' objection on the grounds that it contained an inadmissible opinion and was based on hearsay. Since we have granted plaintiff a new trial we need not address this issue.

For the reasons stated above, we reverse and remand for a new trial on the issues of breach, trespass, conversion, and unfair and deceptive trade practices. On all other issues, we affirm.

Affirmed in part, reversed in part and new trial.

Judges EAGLES and JOHN concur.