**Monique LOWE, Plaintiff,**

v.

**UNIFI, INC.; Brad Nations; and Thomas Odene Stovall, Defendants.**

**No. CIV. 1:02CV00657.**

United States District Court, M.D. North Carolina.

Oct. 28, 2003.

774

Jamie Lisa Forbes, Barron & Berry, L.L.P., Greensboro, NC, for Plaintiff.

Melissa M. Kidd, Helms, Mulliss & Wicker, P.L.L.C., Hamlin Landis Wade, Jr., Smith, Helms, Mulliss & Moore, Charlotte, NC, David B. Puryear, Jr., Robert Joseph Lingle, Puryear and Lingle, P.L.L.C., Greensboro, NC, for Defendants.

## MEMORANDUM OPINION

BULLOCK, District Judge.

On July 12, 2002, Monique Lowe ("Plaintiff") filed this employment discrimination action in the General Court of Justice, Superior Court Division, Guilford County, North Carolina, against Unifi, Incorporated ("Unifi"), Brad Nations ("Nations"), and Thomas Odene Stovall ("Stovall"). Plaintiff's complaint states separate claims of hostile work environment and constructive discharge on the basis of race and gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Plaintiff's complaint also states supplemental claims of battery, intentional infliction of emotional distress ("IIED"), negligent infliction of emotional distress ("NIED"), and wrongful discharge in violation of North Carolina state law.

On August 9, 2002, Defendants Unifi and Nations properly filed notice of removal to this court pursuant to 28 U.S.C. §§ 1331 and 1441.[1] Before the court is

---

1. On August 14, 2002, Defendant Stovall consented to and joined the notice of removal filed by Defendants Unifi and Nations. However, Defendant Stovall has not joined in the

Defendants Unifi and Nations' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. The court has reviewed Plaintiff's complaint and the materials produced during discovery. For the following reasons, Defendants Unifi and Nations' motion for summary judgment will be granted. Plaintiffs' remaining claims against Defendant Stovall will be remanded to state court for further consideration.

## FACTS

Defendant Unifi is in the business of texturing, dyeing, twisting, covering, and beaming multi-filament polyester and nylon yarns. Defendant Unifi maintains a total of ten textile manufacturing facilities throughout North Carolina and six textile manufacturing facilities overseas. Plaintiff, an African–American female, is a former employee of Defendant Unifi who worked for Defendant Unifi and its predecessor, Burlington Industries, from November 4, 1996, until August 31, 2001.

In December 1999, Plaintiff transferred to Defendant Unifi's Plant Number 7 ("Plant # 7") in Rockingham County, North Carolina, where she accepted a job as a "creeler."[2] Shortly after Plaintiff's transfer to Plant # 7, she met Defendant Stovall. Defendant Stovall had worked for Defendant Unifi and its predecessors since 1960 and was employed in Plant # 7's machine maintenance department as a "fixer."[3] Defendant Stovall was not a plant supervisor and had no supervisory authority over Plaintiff.

According to Plaintiff, Defendant Stovall frequently stopped by Plaintiff's workstation and made sexually suggestive comments to her. Plaintiff alleges that shortly after she started work at Plant # 7, Defendant Stovall began complimenting her with statements such as, "You look pretty today" and "I would love to have some of your brown sugar." (Lowe Dep. Vol. I at 270–78.) Plaintiff further alleges that over the course of her employment at Plant # 7, Defendant Stovall repeatedly made inappropriate suggestions to her such as, "We need to run off together," "We need to find a hiding spot," "We need to meet in the parking lot," and "We need to find us a spot in the warehouse." (*Id.* at 276–83.) Plaintiff maintains that she attempted to dissuade Defendant Stovall by ignoring him, verbally discouraging him, and avoiding him entirely.

Plaintiff alleges that on the morning of July 14, 2001, Defendant Stovall sexually assaulted her between two creeling machines at Plant # 7. In her deposition, Plaintiff stated that Defendant Stovall walked up to her while she was working, said into her ear, "Boy, you sure do look pretty today," (*Id.* at 133) and asked her for some "brown sugar." (*Id.* at 153–58.) Plaintiff alleges that when she turned away from Defendant Stovall to continue working, Defendant Stovall grabbed both of her breasts from behind, rubbed his groin against her, and said, "Boy, that sure does feel good." (*Id.* at 141–42, 154–56.) According to Plaintiff's deposition, the alleged sexual assault ended when Plaintiff hit Defendant Stovall with her right arm

---

motion for summary judgment presently before the court.

**2.** The process of creeling involves winding several strands of yarn together onto one completed spool of thread. Creelers are responsible for the operation of creeling machines within the textile manufacturing facility. A creeler's duties include replacing empty bobbins and removing completed spools of thread from creeling machines.

**3.** A fixer's duties include periodic maintenance and repair of textile machinery. Fixers circulate throughout the textile manufacturing facility and look for "flags" that signal machine malfunctions.

and hurried from her workstation in the opposite direction from Defendant Stovall. (*Id.* at 142.) Although Plaintiff discussed Defendant Stovall's alleged sexual misconduct with three of her co-workers during lunch, Plaintiff did not immediately report the incident to any supervisor or plant manager and returned to work after lunch.

On the afternoon of July 14, 2001, Plaintiff cut her hand on a piece of machinery and sought medical attention from a supervisor, Debra Hankins. After Hankins treated Plaintiff's injury, Plaintiff began to cry and told Hankins that Defendant Stovall had put his hands on her breasts. (Hankins Dep. at 28.) Hankins instructed Plaintiff that "she had to tell Harold [Williams] because Harold [Williams] was her immediate supervisor and ... she had to talk to him." (*Id.*) Hankins brought Williams to Plaintiff and Plaintiff repeated her allegations to Williams. According to Plaintiff's deposition, both Hankins and Williams took Plaintiff's allegations very seriously. Both Hankins and Williams informed Plaintiff that Defendant Stovall's alleged behavior was not tolerated at Unifi, and Williams assured Plaintiff that "[w]e're going to have to get down to the bottom of this." (Lowe Dep. Vol. I at 165.)

After speaking with Plaintiff, Hankins and Williams contacted Defendant Stovall's supervisor, Jerry Newsom, as well as Alice Farmer, the Human Resource Manager at Plant # 7, and Defendant Nations, the Site Manager at Plant # 7.[4] Plaintiff repeated her allegations of Defendant Stovall's sexual misconduct to Newsom. Williams then gave Plaintiff permission to leave work early, escorted her to her vehicle, and instructed her to return to work on July 16, 2001, for a meeting with Farmer.

Newsom and Williams then spoke with Defendant Stovall about Plaintiff's allegations. Newsom informed Defendant Stovall of the sexual harassment charges against him, and Defendant Stovall denied that he had engaged in any type of harassment involving Plaintiff. (Newsom Dep. at 27.) After their meeting, Newsom sent Defendant Stovall home early and instructed him to return to work on July 16, 2001, for a meeting with Farmer.

On July 16, 2001, Farmer met with Hankins, Williams, and Newsom about Plaintiff's allegations of sexual harassment by Defendant Stovall. Farmer also spoke with Plaintiff and Defendant Stovall separately about Plaintiff's allegations against Defendant Stovall. During Farmer's conversation with Plaintiff, Plaintiff repeated her allegations against Defendant Stovall. Plaintiff also told Farmer about the sexually suggestive comments that Defendant Stovall had allegedly made to her in the past. Plaintiff explained to Farmer that she felt threatened by Defendant Stovall for the first time since she started working at Plant # 7. According to Plaintiff's deposition, Farmer approached the meeting seriously, listened attentively, and took notes. (Lowe Dep. Vol. I at 169.)

On July 18, 2001, William Horne, Defendant Unifi's Regional Human Resources Manager for Rockingham County, assumed the investigation of Plaintiff's allegations against Defendant Stovall. After receiving Farmer's interview notes, Horne met with Plaintiff and Defendant Stovall separately. Plaintiff gave a description of the alleged incident to Horne consistent with her description of the incident to Hankins, Williams, Newsom, and Farmer.

---

4. Site Manager is the highest managerial position at Plant # 7. As site manager, Defendant Nations had authority to hire new employees. (Nations' Dep. at 15.) Defendant Nations also had authority to take disciplinary action against existing employees and to recommend an employee's termination to the Human Resources Manager. (*Id.* at 16.)

Defendant Stovall once again denied Plaintiff's allegations.

During their meeting on July 18, 2001, Horne and Plaintiff also discussed the possibility of Plaintiff's transfer to another one of Unifi's textile plants. Horne offered to investigate openings at other plants and asked Plaintiff whether she would consider a transfer to another plant. (Horne Dep. at 75.) Plaintiff responded that she "shouldn't have to transfer [because she] didn't do anything wrong." (Lowe Dep. Vol. I at 183.)

On July 19, 2001, Horne interviewed four or five employees identified by Plaintiff as persons who might have information regarding Defendant Stovall's conduct toward Plaintiff and the alleged sexual assault that occurred on July 14, 2001. One employee did tell Horne that Defendant Stovall had asked her for some "sugar" while she was alone with Defendant Stovall in a supply room. (Gaddy Aff. at ¶¶ 5, 11.) However, no employee interviewed by Horne witnessed Defendant Stovall's alleged sexual assault on Plaintiff. Moreover, no employee interviewed by Horne added any new details to Plaintiff's allegations other than what Plaintiff had already told them about Defendant Stovall.

Between July 16, 2001, and July 20, 2001, Defendant Nations spoke to Michelle Gentry, Defendant Stovall's daughter who also worked at Plant # 7. Defendant Nations spoke with Gentry after hearing rumors that Gentry had threatened to physically assault Plaintiff. Although Gentry denied the rumors, Defendant Nations "asked her to make sure that when [Plaintiff] did return to work, that she remained professional ... [to avoid] any problems or issues." (Nations' Dep. at 26.) Defendant Nations warned Gentry that "she could be disciplined, and if there were any problems, they'd be dealt with in a very serious manner and it could involve termination if it was very serious." (*Id.* at 27.) Defen-

dant Nations also reminded Gentry that "if she had any issues with anybody, ... to report them to management immediately." (*Id.* at 26–27.)

On July 20, 2001, Plaintiff returned to work at Plant # 7. Prior to reporting to her workstation, Plaintiff spoke with Jeff Wagner, her Creeling Supervisor, and Defendant Nations because Plaintiff felt unsafe and uncomfortable about returning to work. According to Plaintiff's deposition, Defendant Nations told her that many employees at Plant # 7 knew of her allegations against Defendant Stovall and Gentry "was mad enough to kick [Plaintiff's] butt," (Lowe Dep. Vol. I at 178) but that he did not "have any control of what people might say or do." (*Id.*) When Plaintiff asked Defendant Nations what he was doing about Gentry's threats, Defendant Nations told Plaintiff that "if she had any issues while she was on her job, to report them immediately ... to any member of the management team ... but as far as what people said, ... there was nothing [the management team] could do at that point." (Nations' Dep. at 35–36.) When Plaintiff responded by saying that she still did not feel safe at Plant # 7, Defendant Nations granted Plaintiff a leave of absence from work until July 23, 2001.

On July 23, 2001, Plaintiff and her husband met with Horne to discuss the results of the investigation into Plaintiff's allegations against Defendant Stovall. Horne told Plaintiff that after a thorough investigation, Defendant Unifi could not conclusively determine what had occurred on July 14, 2001. Horne explained that since Defendant Unifi could not substantiate Plaintiff's allegations against Defendant Stovall, Defendant Unifi could not take any action against Defendant Stovall "as far as disciplinary termination or anything like that unless there was something else that was brought forward." (Horne Dep.

at 58–59.) Horne reassured Plaintiff that Defendant Unifi took her complaint very seriously, granted Plaintiff the remainder of the day off from work, and encouraged Plaintiff to report any problems in the future.

On July 25, 2001, Defendant Stovall met with Farmer. Farmer told Defendant Stovall that Defendant Unifi would not take any disciplinary action against him because of his length of employment with Defendant Unifi without any complaints of bad behavior and because Defendant Unifi had no evidence to support Plaintiff's allegations against him. (Farmer Dep. at 31–32.) Farmer also counseled Defendant Stovall on Defendant Unifi's written sexual harassment policy.[5] After Farmer reviewed Defendant Unifi's policy against sexual harassment with Defendant Stovall, Farmer made Defendant Stovall sign a copy of the policy and warned him that any form of harassment in the future would lead to discipline. (Stovall Dep. at 56; see also Farmer Dep. at 32–35.)

Newsom also spoke with Defendant Stovall and instructed him to keep away from Plaintiff. Newsom told Defendant Stovall "to do his job, and if he had flags in the aisle that [Plaintiff] was working in, he would actually skip them and come back, when she wasn't there, at another time." (Newsom Dep. at 64.) Newsom also told Defendant Stovall "[n]ot to have no contact with [Plaintiff], not to be around her, and not to say nothing to her." (Id. at 68.)

Plaintiff remained out of work through July 31, 2001, for reasons apparently related to post traumatic stress syndrome.[6] When Plaintiff returned to work on July 31, 2001, Plaintiff was unable to perform her duties because she was afraid that either Defendant Stovall or Gentry might attack her from behind. Plaintiff spoke with Defendant Nations two times about how uncomfortable she felt, but admitted to Defendant Nations that no one had said or done anything that day to make her feel uncomfortable. (Lowe Dep. Vol. I at 186–87.) Defendant Nations encouraged Plaintiff to go back to work and reassured Plaintiff that "[e]verything will be okay." (Id. at 187.) After speaking with Defendant Nations, Plaintiff left work early and remained out of work on short term disability through August 31, 2001.

On August 3, 2001, Plaintiff spoke with Farmer and explained her interest in transferring to another plant. (Farmer

---

5. Defendant Unifi's "Equal Opportunity" employment policy provides, in pertinent part:

Unifi, Inc. is an equal opportunity employer; and as such, all personnel decisions will be made without regard to race, color, religion, sex, age, national origin, disability, or Vietnam-era status.

Any employee who believes there has been a denial of equal opportunity has the responsibility to bring such matters immediately to the attention of the personnel manager.

Any form of harassment, including sexual harassment, is prohibited. Any employee who believes that he or she is being harassed or is being subjected to unwelcome physical or verbal behavior by either fellow employees, supervisors, customers, or vendors, has the duty to bring such matters immediately to the attention of the personnel manager. The Company will promptly investigate all complaints of harassment. (Def.'s Exs. 4 and 6.) This policy was posted within Defendant Unifi's plants and contained in Defendant Unifi's employee handbook which is provided to all employees. Both Plaintiff and Defendant Stovall were familiar with this policy prior to July 14, 2001. (See Lowe Dep. at 95; see also Stovall Dep. at 149–50.)

6. On July 16, 2001, and July 24, 2001, Plaintiff consulted her health care provider at Western Rockingham Family Medicine for symptoms which included sleeplessness and continual crying. Plaintiff's health care provider diagnosed her with post traumatic stress syndrome and provided her with a doctor's note to excuse her from work through July 31, 2001. (See Def.'s Exs. 22 and 26.)

Dep. at 47–48.) Plaintiff indicated that she would accept a transfer on first shift only. (*Id.;* Lowe Dep. Vol. I at 192.) Farmer informed Plaintiff that she knew of no first-shift positions available at another plant, but allowed Plaintiff to complete an application for transfer to Unifi–Sans in Stoneville, North Carolina.

After her meeting with Plaintiff, Farmer forwarded Plaintiff's application to Bill Hughes, the Plant Manager of Unifi–Sans. Farmer also contacted Horne and asked Horne to investigate the possibility of Plaintiff's transfer to another plant on first shift. Horne subsequently contacted John Stone, the Human Resources Manager at Unifi Plant # 15, and discovered that Stone had no first-shift positions available.

On August 17, 2001, Plaintiff contacted Farmer to further discuss the possibility of a transfer to another plant. Following her conversation with Plaintiff, Farmer sent Horne the following message via e-mail:

> [Plaintiff] called me today and wanted to know why we couldn't move her to another plant.... I told her that we had already discussed this and that she indicated that she only wanted a transfer on 1st shift. She said that was correct and that we should be moving her to another plant on 1st because she hadn't done anything wrong.... I told her that I would again make you aware and she said she would call me Monday to see what your answer was. Again, it seemed like this was a deciding factor whether to take suit out on us. She also ask[ed] about Unifi/Sans. She already filled out a form for there. I sent Bill [an] E-mail stating to keep her in mind as a courtesy to [Plaintiff].

(Pl.'s Ex. 26.) Plaintiff never contacted Farmer on Monday and resigned from her position at Plant # 7 without notice on August 31, 2001.

## DISCUSSION

Summary judgment must be granted when the pleadings, responses to discovery, and the record show that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of persuasion on all relevant issues. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the non-moving party must come forward with specific facts demonstrating a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *see also Cray Communications, Inc. v. Novatel Computer Sys., Inc.,* 33 F.3d 390, 393–94 (4th Cir.1994) (moving party on summary judgment may simply argue the absence of evidence by which the non-moving party can prove her case). The non-moving party may survive a motion for summary judgment by producing "evidence from which a [fact finder] might return a verdict in his [or her] favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Summary judgment is proper only when there are no genuine issues presented for trial and the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In considering the evidence, all reasonable inferences must be drawn in favor of the non-moving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient; there must be evidence on which the [fact finder] could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. 2505.

### A. Plaintiff's Title VII Claims

### 1. Hostile Work Environment

In her "First Cause of Action," Plaintiff alleges that Defendant Unifi subjected her to a racially and sexually hostile work environment in violation of Title VII. Under Title VII, it is "an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Title VII creates a cause of action in favor of persons forced to work in a hostile workplace because the workplace environment is considered a term, condition, or privilege of employment. *See Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 73, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

■ Courts typically evaluate race-based hostile work environment claims and gender-based hostile work environment claims under the same analysis. To support her hostile work environment claim, Plaintiff must establish four elements: (1) unwelcome harassment, (2) based on plaintiff's gender or race, (3) sufficiently severe or pervasive so as to alter plaintiff's conditions of employment and to create an abusive work environment, and (4) there is some basis for imputing liability to the employer. *See Conner v. Schrader–Bridgeport Int'l, Inc.,* 227 F.3d 179, 192 (4th Cir.2000) (internal citations omitted); *see also Causey v. Balog,* 162 F.3d 795, 801 (4th Cir.1998). Viewing the facts in a light most favorable to Plaintiff, the court will assume without deciding that Plaintiff has satisfied the first three elements required to support her hostile work environment claim. Therefore, Plaintiff must demonstrate that conduct allegedly creating a hostile work environment is imputable to Defendant Unifi to survive summary judgment.

■ Plaintiff advances two theories by which to impute liability to Defendant Unifi on the basis of hostile work environment. First, Plaintiff contends that Defendant Unifi is liable in negligence for creating a hostile work environment because it failed to take remedial action after actual or constructive knowledge of Defendant Stovall's alleged misconduct. (Compl.¶¶ 30–31.) In the alternative, Plaintiff contends that Defendant Unifi is vicariously liable for the alleged misconduct of Defendant Nations because Defendant Nations "participated in the creation of an actionable hostile work environment based on race and sex." (Compl.¶¶ 32–33.) Both theories represent valid means of imputing Title VII liability to an employer in sexual and racial harassment cases involving a hostile work environment. However, Plaintiff has failed to produce sufficient evidence to survive summary judgment under either theory of liability.

### (a) Negligence Theory

■ "In a case where an employee is sexually harassed by a coworker, the employer may be liable in negligence if it knew or should have known about the harassment and failed to take effective action to stop it." *Ocheltree v. Scollon Prods., Inc.,* 335 F.3d 325, 333–34 (4th Cir.2003) (citing *Spicer v. Commonwealth of Va. Dep't of Corr.,* 66 F.3d 705, 710 (4th Cir.1995)). "Knowledge of workplace misconduct may be imputed to an employer by circumstantial evidence if the conduct is shown to be sufficiently pervasive or repetitive so that a reasonable employer, intent on complying with Title VII, would be aware of the conduct." *Spicer,* 66 F.3d at 710. An employer also may be charged with constructive knowledge of coworker harassment when it fails to provide reason-

able procedures for victims to register complaints. *Ocheltree,* 335 F.3d at 334 (citing *Richardson v. N.Y. State Dep't of Corr. Serv.,* 180 F.3d 426, 441 (2d Cir. 1999), and *Wilson v. Tulsa Junior Coll.,* 164 F.3d 534, 540–42 (10th Cir.1998)).

■ In the instant case, Plaintiff has failed to produce direct evidence showing that Defendant Unifi knew or should have known that Defendant Stovall's alleged misconduct was an ongoing condition of Plaintiff's employment. According to Plaintiff, Defendant Stovall stopped by Plaintiff's workstation and made sexually suggestive comments to her "all the time." (Lowe Dep. Vol. I at 274.) However, Plaintiff admits that prior to July 14, 2001, she never complained to any manager or supervisor about Defendant Stovall's behavior. (*Id.* at 97.) Instead, Plaintiff waited until July 16, 2001, to report the sexually suggestive comments that Defendant Stovall allegedly repeated to her during her employment at Plant # 7. Therefore, the court finds that no evidentiary basis exists for a rational trier of fact to find that Defendant Unifi knew about Defendant Stovall's alleged misconduct toward Plaintiff during the period of Plaintiff's employment prior to July 14, 2001.

Plaintiff has also failed to produce sufficient circumstantial evidence showing that Defendant Stovall's alleged misconduct was sufficiently pervasive or repetitive to impute knowledge of it to Defendant Unifi. Instead, the evidence presented shows that Defendant Stovall worked for Defendant Unifi and its predecessors for over forty years without any prior complaints of bad behavior or sexual harassment. The only evidence that shows Defendant Stovall may have engaged in some type of prior sexual misconduct while employed by Defendant Unifi is a statement from another employee who stated that on one occasion, Defendant Stovall asked her for some "sugar" while they were alone together in a supply room. However, Plaintiff cannot survive summary judgment on a mere scintilla of evidence. *See Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. Viewing the evidence in a light most favorable to Plaintiff, the court finds that Defendant Stovall's alleged misconduct was neither sufficiently pervasive nor repetitive so as to impute knowledge of it to Defendant Unifi.

■ Moreover, Plaintiff has not produced any evidence to show that Defendant Unifi failed to provide a reasonable procedure for victims of workplace harassment to register complaints. According to Farmer's deposition, Defendant Unifi adopted specific policies and procedures for handling harassment complaints and trained its supervisors to handle such complaints:

Q. Had you received any training in investigating harassment complaints?

A: I have. I can't recall——

Q: Did Unifi have specific policies and procedures for investigating harassment complaints?

A: Unifi had specific policies. I think it was on page 23 of the handbook.

Q: What I'm asking is, Did Unifi have specific policies and procedures for the investigation of harassment?

A: Yes.

Q: And what were those policies and procedures?

A: If the allegation was made to a supervisor, they are to contact the Personnel Manager. The Personnel Manager will interview and gather the facts from all parties. We are to be objective. We are to be thorough and ask for witnesses. We're to interview witnesses. We're to follow up with the accused person and person making the allegations. We're instructed to ask

them not [to] talk about it with people on the floor.

(Farmer Dep. at 16–17.) Additionally, at all times relevant to Plaintiff's complaint, Defendant Unifi maintained a written "Equal Opportunity" employment policy that instructed victims of workplace harassment on how to register complaints. Defendant Unifi's "Equal Opportunity" employment policy provided as follows, in pertinent part:

Any form of harassment, including sexual harassment, is prohibited. Any employee who believes that he or she is being harassed or is being subjected to unwelcome physical or verbal behavior by either fellow employees, supervisors, customers, or vendors, has the duty to bring such matters immediately to the attention of the personnel manager. The Company will promptly investigate all complaints of harassment.

(Defs.' Exs. 4 and 6.) Plaintiff admits to receiving this policy and knowing about the policy prior to July 14, 2001. Based on the evidence presented, Plaintiff has not shown that Defendant Unifi failed to provide its employees with a reasonable procedure to report workplace harassment. Therefore, the court finds no evidentiary basis to charge Defendant Unifi with constructive knowledge of Defendant Stovall's alleged misconduct toward Plaintiff.

■ Furthermore, Plaintiff cannot show inadequacy in Defendant Unifi's response to Plaintiff's complaints about Defendant Stovall's misconduct. The Fourth Circuit has never required that a particular remedial response by an employer to complaints of harassment be the most effective response. *Mikels v. City of Durham, N.C.,* 183 F.3d 323, 330 (4th Cir.1999). Although inappropriate conduct does occur in the workplace from time to time, employers cannot be held to a standard under which they are liable for any and all inappropriate conduct of their employees.

*Spicer,* 66 F.3d at 711. Employers can be required to respond promptly and effectively when presented with the existence of illegal conduct, but " 'when an employer's remedial response results in the cessation of the complained of conduct, liability must cease as well.' " *Id.* (quoting *Spicer,* 66 F.3d at 711).

In the instant case, Defendant Unifi quickly confronted Defendant Stovall with Plaintiff's accusations and suspended Defendant Stovall during its investigation into Plaintiff's complaint. At the conclusion of the investigation, Farmer counseled Defendant Stovall on Defendant Unifi's "Equal Opportunity" employment policy. Farmer also warned Defendant Stovall that any form of harassment in the future would lead to discipline. At Farmer's direction, Newsom instructed Defendant Stovall to avoid any contact with Plaintiff. Thereafter, Plaintiff reported no further harassment by Defendant Stovall.

Plaintiff has not shown that she had any further contact with Defendant Stovall after the alleged incident on July 14, 2001. The undisputed evidence presented shows that Defendant Unifi acted promptly and took adequate remedial action to correct the alleged misconduct by Defendant Stovall. Therefore, Defendant Unifi cannot be held liable in negligence for the hostile work environment created by the alleged misconduct of Defendant Stovall.

(b) Vicarious Liability Theory

■ Employers are not automatically liable for acts of harassment committed by supervisors against subordinates. *See Vinson,* 477 U.S. at 72, 106 S.Ct. 2399. There must be some basis for imputing the acts of the supervisor to the employer. *Spriggs v. Diamond Auto Glass,* 242 F.3d 179, 186 (4th Cir.2001). "An employer is subject to vicarious liability to a victimized employee for an actionable hostile work

environment created by a supervisor with immediate (or successively higher) authority over the employee." *Faragher v. City of Boca Raton,* 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *see also Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

In the instant case, Plaintiff does not contend that Defendant Nations subjected her to any race-based harassment or created a hostile work environment by his own sexual misconduct and does not oppose Defendant Nations' motion for summary judgment on any claims against him individually. Instead, Plaintiff contends that Defendant Nations contributed to an already existing hostile work environment during a meeting with Plaintiff on July 20, 2001. During that meeting, Defendant Nations told Plaintiff that many employees at Plant # 7 knew of her allegations against Defendant Stovall and Gentry "was mad enough to kick [Plaintiff's] butt," (Lowe Dep. at 178) but that he did not "have any control over what people might say or do." (*Id.*) Plaintiff argues that Defendant Nations' conduct unreasonably interfered with Plaintiff's work performance because "[Defendant] Nations disclaimed all responsibility for the threats and did not inform Plaintiff that he had counseled Ms. Gentry." (Pl.'s Br. Opp'n Defs.' Mot. Summ. J. at 14.)

■ Assuming, *arguendo,* that Defendant Nations' conduct created a hostile work environment, Defendant Unifi is entitled to raise the affirmative defense outlined in *Faragher,* 524 U.S. at 807–08, 118 S.Ct. 2275, and *Ellerth,* 524 U.S. at 764–65, 118 S.Ct. 2257. An employer may raise the *Faragher* and *Ellerth* affirmative defense to Title VII liability for an actionable hostile work environment created by a supervisor if the employer took no tangible employment action against the employee. *See Faragher,* 524 U.S. at 808, 118 S.Ct.

2275, and *Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257; *see also Murray v. City of Winston–Salem,* 203 F.Supp.2d 493, 499 (M.D.N.C.2002). If this preliminary requirement is met, the employer must establish two elements by a preponderance of the evidence to effectively assert the *Faragher* and *Ellerth* affirmative defense: " '(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise.' " *Matvia v. Bald Head Island Mgmt., Inc.,* 259 F.3d 261, 266–67 (4th Cir.2001) (quoting *Faragher,* 524 U.S. at 807, 118 S.Ct. 2275, and *Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257).

■ Since Plaintiff did not suffer any tangible employment action, Defendant Unifi is entitled to raise the *Faragher* and *Ellerth* affirmative defense. "As to the first element of the affirmative defense, 'dissemination of an effective anti-harassment policy provides compelling proof that an employer has exercised reasonable care to prevent and correct sexual harassment.' " *Murray,* 203 F.Supp.2d at 500 (quoting *Matvia,* 259 F.3d at 268). Plaintiff may rebut this proof with evidence that Defendant Unifi implemented the policy in bad faith or was deficient in enforcing the policy. *See id.*

■ As stated above, during Plaintiff's tenure at Plant # 7, Defendant Unifi maintained an "Equal Opportunity" employment policy that prohibited sexual harassment and contained a complaint procedure. Defendant Unifi's "Equal Opportunity" employment policy was posted within Defendant Unifi's plants and outlined in the employee handbook provided to all employees. Both Plaintiff and Defendant Stovall admit that they were familiar with

this employment policy prior to July 14, 2001. (*See* Lowe Dep. Vol. I at 95; *see also* Stovall Dep. at 149–50.) Thus, the undisputed facts clearly indicate that Defendant Unifi maintained and disseminated an effective anti-harassment policy. *See Matvia*, 259 F.3d at 268 (stating that "[i]n the face of a policy that clearly defines sexual harassment and to whom sexual harassment should be reported, [plaintiff] cannot survive summary judgment").

Plaintiff contends that Defendant Unifi is not entitled to assert the affirmative defense because Defendant Unifi's investigation into Plaintiff's allegations was insufficient. However, Plaintiff has presented no evidence that Defendant Unifi implemented its "Equal Opportunity" employment policy in bad faith or was deficient in enforcing the policy. To the contrary, the evidence presented shows that Defendant Unifi conducted a thorough investigation of Plaintiff's allegations against Defendant Stovall. Between July 16, 2001, and July 23, 2001, Farmer and Horne interviewed Plaintiff and Defendant Stovall as well as Hankins, Williams, and Newsom to determine whether the alleged sexual assault occurred. In addition, Farmer and Horne interviewed four or five employees identified by Plaintiff as persons who might have information regarding Defendant Stovall's misconduct toward Plaintiff. None of the management team or employees interviewed witnessed the alleged attack or provided any evidence to substantiate Plaintiff's allegations against Defendant Stovall.

After completing the investigation, Horne met with Plaintiff to explain that Defendant Unifi could not conclusively determine what had occurred on July 14, 2001. Horne explained to Plaintiff that Defendant Unifi took her complaint very seriously and encouraged Plaintiff to report any problems in the future. In addition, Horne granted Plaintiff the remainder of the day off from work.

Although Farmer and Horne could not substantiate Plaintiff's allegations against Defendant Stovall, Farmer counseled Defendant Stovall on Defendant Unifi's "Equal Opportunity" employment policy and made him sign a copy of the policy. Farmer also warned Defendant Stovall that any form of harassment in the future would lead to discipline. Later, Newsom warned Defendant Stovall "[n]ot to have no contact with [Plaintiff], not to be around her, and not to say nothing to her." (Newsom Dep. at 68.)

Plaintiff argues that "[b]oth the adequacy of Unifi's investigation and its conclusion that nothing happened are suspect." (Pl.'s Br. Opp'n Defs.' Mot. Summ. J. at 12.) However, Plaintiff has failed to produce sufficient evidence to raise a genuine issue as to whether Defendant Unifi implemented its employment policy in bad faith or that Defendant Unifi was deficient in enforcing the policy. Therefore, the court finds that Defendant Unifi exercised reasonable care to address and promptly correct Plaintiff's complaint of sexual harassment by Defendant Stovall.

With regard to the second element of the affirmative defense, Defendant Unifi has presented sufficient evidence to show that Plaintiff unreasonably failed to take advantage of the preventative or corrective opportunities provided by Defendant Unifi. Defendant Stovall may have subjected Plaintiff to unwelcome sexual advances during Plaintiff's tenure at Plant # 7; however, Plaintiff admits that she did not report any alleged misconduct by Defendant Stovall to a member of Defendant Unifi's management team before July 14, 2001. "[P]roof that a plaintiff employee failed to follow a complaint procedure 'will normally suffice to satisfy the employer's burden under the second element of the

defense.'" *Brown v. Perry,* 184 F.3d 388, 395 (4th Cir.1999) (quoting *Faragher,* 524 U.S. at 808, 118 S.Ct. 2275); *see also Barrett v. Applied Radiant Energy Corp.,* 240 F.3d 262, 268 (4th Cir.2001) (holding that the plaintiff unreasonably failed to take advantage of the complaint procedure where the plaintiff did not inform management about sexual harassment); *Parkins v. Civil Constructors of Illinois, Inc.,* 163 F.3d 1027, 1038 (7th Cir.1998) (observing that "'the law against sexual harassment is not self-enforcing' and an employer cannot be expected to correct harassment unless the employee makes a concerted effort to inform the employer that a problem exists").

Defendant Unifi has produced sufficient evidence to satisfy both elements of the *Faragher* and *Ellerth* affirmative defense to vicarious liability for Defendant Nations'· conduct. Plaintiff has failed to produce sufficient evidence to rebut Defendant Unifi's proof and raise a genuine issue of fact for trial. Therefore, the court will grant Defendant Unifi's motion for summary judgment with respect to Plaintiff's hostile work environment claim.

2. Constructive Discharge Claim

 In her "Second Cause of Action," Plaintiff states a claim of constructive discharge against Defendant Unifi. "The doctrine of constructive discharge protects an employee 'from a calculated effort to pressure him [or her] into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by his [or her] co-workers.'" *Carter v. Ball,* 33 F.3d 450, 459 (4th Cir.1994). In order to support a constructive discharge claim under Title VII, a plaintiff must show that her employer deliberately created intolerable working conditions and thereby forced the plaintiff to quit her job. *Bristow v. Daily Press, Inc.,* 770 F.2d 1251, 1255 (4th Cir.1985). A plaintiff seeking to recover under a claim of construc-

tive discharge must prove two elements: "(1) 'deliberateness of the employer's actions' and (2) 'intolerability of the working conditions.'" *Martin v. Cavalier Hotel Corp.,* 48 F.3d 1343, 1354 (4th Cir.1995) (citations omitted).

 "Deliberateness exists only if the actions complained of were intended by the employer as an effort to force the employee to quit." *E.E.O.C. v. Clay Printing Co.,* 955 F.2d 936, 944 (4th Cir. 1992) (citation and internal quotation omitted). A plaintiff can establish the deliberateness of her employer's actions by producing "actual evidence of intent by the employer to drive the employee from the job, or circumstantial evidence of such intent, including a series of actions that single out a plaintiff for differential treatment." *Johnson v. Shalala,* 991 F.2d 126, 131 (4th Cir.1993). A plaintiff may also show that an employer acted deliberately or with intent by showing the employer's "failure to act in the face of known intolerable conditions." *Bristow,* 770 F.2d at 1255.

 In the instant case, Plaintiff relies solely on circumstantial evidence to support her constructive discharge claim. Plaintiff contends that Defendant Unifi acted with deliberateness by finding Plaintiff's allegations unsubstantiated in the face of substantial evidence to the contrary. Plaintiff maintains that the following evidence supports a different conclusion: (1) six people described Plaintiff as extremely distraught after the attack; (2) two supervisors indicated that they believed her; (3) Plaintiff had never had a safety accident before; (4) Plaintiff's version of the event was consistent repetition after repetition; (5) Defendant Stovall knew the identity of his accuser before it was revealed to him; and (6) Defendant Stovall altered his version of events and stated that Plaintiff was suffering from a

"spell." (Pl.'s Br. Opp'n Defs.' Mot. Summ. J. at 12.)

Plaintiff has failed to present sufficient proof that Defendant Unifi acted with deliberate intent to force Plaintiff to resign when it found Plaintiff's allegations against Defendant Stovall to be unsubstantiated. To the contrary, the evidence presented shows that between July 14, 2001, and July 23, 2001, Defendant Unifi conducted a thorough investigation of Plaintiff's allegations against Defendant Stovall. During its investigation, Defendant Unifi interviewed members of its management team and other employees, counseled Defendant Stovall on its employment policy prohibiting sexual harassment, and cautioned Defendant Stovall against any future misconduct. Additionally, Defendant Unifi held multiple meetings with Plaintiff and reassured Plaintiff that it took her complaint very seriously. Viewing the evidence in a light most favorable to Plaintiff, the court finds that Plaintiff has failed to produce sufficient evidence to raise a genuine issue of fact as to whether Defendant Unifi conducted an inadequate investigation or acted with deliberate intent to drive Plaintiff from her position at Plant # 7.

Plaintiff also contends that Defendant Unifi demonstrated a deliberate intent to force Plaintiff to resign by failing to undertake a serious effort to find her another position at another plant. However, the evidence presented shows that Defendant Unifi did make serious efforts to transfer Plaintiff to another plant before Plaintiff voluntarily terminated her employment. When Horne first asked Plaintiff whether she would consider a transfer to another plant, Plaintiff responded by saying that "[she] shouldn't have to transfer [because she] didn't do anything wrong." (Lowe Dep. Vol. I at 183.) Later, when Plaintiff contacted Farmer and expressed an interest in transferring to a first-shift position at another plant, both Farmer and Horne cooperated with Plaintiff's request by contacting two other plants on Plaintiff's behalf.

Plaintiff contends that although Horne and Farmer insisted that there were no first-shift positions available at another plant, her seniority entitled her to a first-shift position at another plant. To the contrary, Unifi's "Seniority" policy specifically advises employees that "[i]f you're transferred ... to another job or department group, you temporarily lose your seniority until you complete six months in the new job or department group." (Pl.'s Ex. 23.) Even if Plaintiff's seniority did entitle her to a first-shift position at another plant, Plaintiff has failed to produce evidence of any first-shift positions that were available at another plant operated by Defendant Unifi in August 2001. Without evidence that a first-shift position existed at another plant at the time of her request for a transfer, Plaintiff cannot show that Defendant Unifi intentionally or deliberately denied her request for a transfer to a first-shift position at another plant.

Viewing the evidence in a light most favorable to Plaintiff, no reasonable jury could find that Defendant Unifi acted with deliberate intent to force Plaintiff to resign. Plaintiff cannot satisfy the first prong of her constructive discharge claim. Therefore, the court will grant Defendant Unifi's motion for summary judgment with respect to Plaintiff's constructive discharge claim.

B. Plaintiff's State Law Claims

Plaintiff's complaint, which was originally filed in North Carolina state court, contains both federal and state claims for relief against Defendants Unifi, Nations, and Stovall. Defendants Unifi and Nations have properly removed Plaintiff's suit because Plaintiff's claims of hostile work

environment and constructive discharge in violation of Title VII raise federal questions over which the court has original jurisdiction. *See* 28 U.S.C. §§ 1331 and 1441(a). The court also has supplemental jurisdiction over Plaintiff's remaining state law claims for battery, IIED, NIED, and wrongful discharge because they are so related to Plaintiff's Title VII claims that they form part of the same case or controversy under Article III of the United States Constitution. *See* 28 U.S.C. § 1367(a).[7]

### 1. Plaintiff's Battery Claim

■ In her complaint, Plaintiff states a claim of battery against Defendant Unifi based on her contention that Defendant Unifi ratified Defendant Stovall's alleged tortious conduct. In order to show ratification, the plaintiff must establish that the "employer had knowledge of all material facts and circumstances relative to the wrongful act, and that the employer, by words or conduct, show[ed] an intention to ratify the act." *Brown v. Burlington Indus., Inc.,* 93 N.C.App. 431, 437, 378 S.E.2d 232, 236 (1989). "The jury may find ratification from any course of conduct on the part of the principal which reasonably tends to show an intention on his part to ratify the agent's unauthorized acts." *Carolina Equip. & Parts Co. v. Anders,* 265 N.C. 393, 401, 144 S.E.2d 252, 258 (1965).

In the instant case, Plaintiff has not produced any evidence to show that Defendant Unifi, by its conduct or words, ratified Defendant Stovall's alleged misconduct. As set out above, Defendant Unifi acted promptly and took adequate remedial action to correct the alleged misconduct

by Defendant Stovall. Moreover, Plaintiff admitted in her deposition that no member of Defendant Unifi's management team ever approved of Defendant Stovall's conduct or suggested to her that such conduct was appropriate. (*See* Lowe Dep. Vol. I at 203–04.) No reasonable jury could find intentional ratification based on Defendant Unifi's response to Plaintiff's complaint against Defendant Stovall. Therefore, Defendant Unifi's motion for summary judgment on Plaintiff's battery claim will be granted.

### 2. Plaintiff's IIED and NIED Claims

■ Plaintiff also makes claims against Defendants Unifi and Nations for IIED and NIED. Plaintiff does not oppose Defendant Nations' motion for summary judgment. Therefore, the court will treat Defendant Nations' motion for summary judgment as uncontested with regard to Plaintiff's claims of IIED and NIED. However, an uncontested motion for summary judgment is not automatically granted, and the moving party must still show that the facts entitle him to a judgment as a matter of law. *Campbell v. Hewitt, Coleman & Assocs., Inc.,* 21 F.3d 52, 55 (4th Cir.1994); *Custer v. Pan Am. Life Ins. Co.,* 12 F.3d 410, 416 (4th Cir.1993).

■ To support a claim of IIED under North Carolina law, a plaintiff must satisfy the following elements: (1) extreme and outrageous or reckless conduct, (2) which is intended to cause and does cause, (3) severe emotional distress to another. *Dickens v. Puryear,* 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981). Viewing the evidence in a light most favorable to Plaintiff, Defendant Nations' conduct falls far short

---

**7.** Whether federal law claims and state law claims form part of the same case or controversy is determined by whether they " 'derive from a common nucleus of operative fact' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.' " *Hinson v. Norwest Fin. S.C., Inc.,* 239 F.3d 611, 615 (4th Cir.2001) (quoting *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 349, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)).

of the degree of extreme and outrageous behavior required to establish a claim of intentional infliction of emotional distress. *See Hogan v. Forsyth Country Club Co.*, 79 N.C.App. 483, 487, 340 S.E.2d 116, 119 (1986) (stating that claims of IIED are "reserved for conduct which is 'utterly intolerable in a civilized community' "). Plaintiff cannot satisfy the first element of her IIED claim against Defendant Nations and cannot hold Defendant Unifi liable for Defendant Nations' conduct under a theory of vicarious liability. Therefore, Defendants Unifi and Nations' motion for summary judgment on Plaintiff's IIED claim will be granted.

 To support a claim of NIED under North Carolina law, a plaintiff must establish "that (1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress ..., and (3) the conduct did in fact cause the plaintiff severe emotional distress." *Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.*, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990). In the instant case, Plaintiff has produced no evidence that Defendant Nations engaged in negligent conduct. To the contrary, Defendant Nations exercised reasonable care by instructing Gentry to remain professional after Plaintiff returned to work, by informing Plaintiff of threats and rumors concerning her at Plant #7, and by encouraging Plaintiff to immediately report any problems to a member of the management team. Plaintiff cannot satisfy the first element of her NIED claim against Defendant Nations and cannot hold Defendant Unifi liable for Defendant Nations'

conduct under a theory of vicarious liability. Therefore, Defendants Unifi and Nations' motion for summary judgment on Plaintiff's NIED claim will be granted.

### 3. Plaintiff's Wrongful Discharge Claim

 Plaintiff also makes a claim against Defendants Unifi and Nations for wrongful discharge in violation of North Carolina public policy as set forth in the North Carolina Equal Employment Practices Act, N.C. Gen.Stat. § 143–422.1 *et seq.* ("NCEEPA"). However, North Carolina does not recognize tort claims under the NCEEPA for wrongful constructive discharge or wrongful discharge in retaliation for complaints of sexual harassment. *See DeWitt v. Mecklenburg County*, 73 F.Supp.2d 589, 599 n. 6 (W.D.N.C.1999) ("Plaintiff's potential constructive discharge claim is only cognizable under federal law, as North Carolina has not recognized the tort of constructive discharge."); *Cortes v. McDonald's Corp.*, 955 F.Supp. 539, 540 (E.D.N.C.1996) ("North Carolina courts have yet to recognize the employment tort of constructive discharge."); *see also McLean v. Patten Communities, Inc.*, 332 F.3d 714, 719 (4th Cir.2003) ("[T]here is no private right of action under North Carolina law for retaliation under § 143–422.2."); *Mullis v. Mechanics & Farmers Bank*, 994 F.Supp. 680, 688 (M.D.N.C. 1997) ("[N]o North Carolina court has interpreted the NCEEPA to include a claim for discharge in retaliation for complaining about discriminatory employment practices."). Therefore, Plaintiff's wrongful discharge claim fails as a matter of law.[8] Defendants Unifi and Nations' motion for

---

**8.** Even if North Carolina recognized the tort of wrongful constructive discharge under the NCEEPA, Plaintiff has not shown that she was constructively discharged. As stated above, no reasonable jury could find that Defendant Unifi acted with deliberate intent to

force Plaintiff to resign. Therefore, Plaintiff has not produced sufficient evidence to support her wrongful discharge claim from which a fact finder might return a verdict in her favor.

summary judgment on Plaintiff's wrongful discharge claim will be granted.

4. Plaintiff's Remaining State Law Claims

██ Plaintiff's only remaining claims are against Defendant Stovall individually for battery, IIED, and NIED. Claims such as these are routinely tried in the state courts and traditionally present substantive questions exclusive to state law. It is in the interests of justice that such claims be decided by the court most familiar with North Carolina state law. *See* 28 U.S.C. § 1367(c). Therefore, the court will remand these remaining claims against Defendant Stovall to the General Court of Justice, Superior Court Division, Guilford County, North Carolina.

### CONCLUSION

For the foregoing reasons, Defendants Unifi and Nations' motion for summary judgment will be granted. Plaintiff's remaining claims against Defendant Stovall will be remanded to state court for further consideration.

An order and judgment in accordance with this memorandum shall be entered contemporaneously herewith.[9]

*ORDER and JUDGMENT*

For the reasons set forth in the memorandum opinion filed contemporaneously herewith,

IT IS ORDERED that Defendants Unifi and Nations' motion for summary judgment [Doc. # 31] is **GRANTED**, and this action is **DISMISSED** with prejudice against Defendants Unifi and Nations.

IT IS FURTHER ORDERED that Plaintiff's remaining claims against Defendant Stovall are **REMANDED** to the General Court of Justice, Superior Court Division, Guilford County, North Carolina.

---

9. In her response to Defendants' motion for summary judgment, Plaintiff contends that the court should not consider Defendants' motion because Defendants did not file a notice of intent to file a dispositive motion within ten days of the close of discovery. However, in their response to Plaintiff's request for an extension of the discovery period, Defendants clearly stated their intention to move for summary judgment. Furthermore, the magistrate judge's order of June 3, 2003, extended the deadline for filing dispositive motions through June 23, 2003, and Defendants'

motion was filed on June 6, 2003. Plaintiff does not contend that she was prejudiced in any way by Defendants' failure to file another notice separate and apart from that contained in their response to Plaintiff's request for an extension of the discovery period.

Plaintiff also moves to strike portions of certain affidavits filed by Defendants in support of their motion for summary judgment. While Plaintiff's objections may be well taken, the court did not consider any of the affidavits in reaching its decision. Therefore, Plaintiff's motion to strike will be denied as moot.